OPINION
{¶ 1} Appellant Robert Laux appeals the decision of the Court of Common Pleas, Coshocton County, Juvenile Division, which granted permanent custody of his child Robert, aka "BJ," to Appellee Coshocton County Department of Job and Family Services ("JFS"). The relevant facts leading to this appeal are as follows.
 {¶ 2} Appellant Robert Laux is the biological father of Robert, hereinafter "BJ," age nine. Jennifer Christner is the biological mother of BJ and three other children: Harley, John, and Tristan. John Willis is the biological father of John. Andrew Westbrook is the biological father of Tristan. Jennifer's parents adopted Harley due to their concerns for his safety while in Jennifer's custody. Coshocton County JFS became involved with the family in March 1999 when BJ, then age five, was found wandering, by himself, on Route 93 about one-half mile from his home. As a result of this incident, Jennifer was charged with child endangering and subsequently found guilty.
 {¶ 3} On June 25, 1999, JFS filed a complaint alleging dependency and neglect regarding John, Tristan, and BJ. The trial court made a finding of dependency and ultimately dismissed the neglect allegations. The trial court issued further orders and approved a case plan. After JFS became involved, it was discovered that the children suffered from behavioral problems and developmental delays. JFS referred Jennifer to counseling and parenting classes. JFS also provided Jennifer with in-home parent training and a person to help her address budgeting and the cleanliness of the home.
 {¶ 4} On May 12, 2000, the trial court conducted an emergency custody hearing to remove the children from Jennifer's home based upon allegations that the house was chaotic, domestic violence issues, and bruising on one of the children. Following this hearing, the trial court granted temporary custody to JFS. On September 11, 2000, the trial court granted an extension of temporary custody to JFS.
 {¶ 5} On May 29, 2001, JFS filed a motion for permanent custody. The trial court continued the hearing date several times. After the time limit for the permanent custody hearing expired, JFS re-filed its motion for permanent custody on February 1, 2002. The trial court conducted an adjudicatory hearing on April 17, 2002. The trial court issued a judgment entry on June 7, 2002, granting JFS's motion for permanent custody.
 {¶ 6} Appellant timely filed a notice of appeal and herein sets forth the following two Assignments of Error:
 {¶ 7} "I. THE PROCESS EMPLOYED BY APPELLEE TO TERMINATE APPELLANT'S PARENTAL RIGHTS VIOLATES HIS RIGHTS GUARANTEED BY THE CONSTITUTION OF THE UNITED STATES, AMENDMENTS IX AND XIV, AND THE CONSTITUTION OF THE STATE OF OHIO, ART. I, § 1.
 {¶ 8} "II. THE CONCLUSIONS OF THE TRIAL COURT ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
 I. {¶ 9} In his First Assignment of Error, appellant argues that the procedures utilized by JFS in obtaining permanent custody violated his constitutional rights. We disagree.
 {¶ 10} We first note that appellant brings a constitutional challenge to the "process employed by Appellee [JFS]" in the case sub judice rather than the legal proceedings per se. Ohio Constitution Art.IV, § 3(B)(2), reads in pertinent part: "Courts of appeals shall have such jurisdiction as may be provided by law to review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district * * *." We thus presume that appellant is challenging the trial court's implicit approval of JFS's handling of the overall case. Nonetheless, as this Court has previously noted, Ohio's statutory scheme for permanent custody matters calls for reasonable, not flawless, case planning, and R.C. 2151.414(C) mandates that "[t]he court shall not deny an agency's motion for permanent custody solely because the agency failed to implement any particular aspect of the child's case plan." In re Baby Boy Eddy, (Nov. 12, 1999), Fairfield App. No. 99 CA 17. As JFS points out, appellant was named in the original complaint and fully aware of the case plan and the amendments thereto. The trial court appointed him an attorney and gave him notice of all pertinent hearings. Appellant had an opportunity to object to each case plan every six months. Appellant appeared with counsel and testified at the permanent custody evidentiary hearings. Although the case was pending for nearly three years, he failed to exercise his right to object to the case plan as it developed. Although appellant now asks this Court to "extend its review of the due process requirement not only to the final hearing, but to the entire process by which children are taken," (Appellant's Brief at 13), it is well-established that failure to raise objections to proceedings on constitutional grounds results in a waiver of such assignments of error. See State v. Awan (1986), 22 Ohio St.3d 120, 489 N.E.2d 277.
 {¶ 11} Appellant's First Assignment of Error is therefore overruled.
 II. {¶ 12} Appellant maintains, in his Second Assignment of Error, the trial court's decision granting permanent custody to JFS was against the manifest weight of the evidence. We disagree.[1]
 {¶ 13} R.C. 2151.414(B)(1) addresses under what circumstances a trial court may grant permanent custody. This statute provides as follows:
 {¶ 14} "(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 {¶ 15} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 16} "(b) The child is abandoned.
 {¶ 17} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 18} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 19} In determining the best interest of a child, the trial court is required to consider the factors contained in R.C. 2151.414(D). These factors are as follows:
 {¶ 20} "(1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 21} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 22} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 23} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 24} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 25} In the case sub judice, the trial court found, in its conclusions of law, under R.C. 2151.414(B)(1)(d), that the children had been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999. Judgment Entry, June 7, 2002, at 8. Appellant herein specifically challenges the following remaining conclusions of law:
 {¶ 26} "2. B.J. is abandoned by his Father as `abandoned' is defined by ORC Section 2151.011(C).
 {¶ 27} "* * *
 {¶ 28} "4. JFS has proven by clear and convincing evidence that the placement of the children outside their home and notwithstanding reasonable case planning and diligent efforts by JFS to assist Jennifer, Robert Laux, John Willis, and Andrew Westbrooke to be placed outside the home, Jennifer, Robert Laux, John Willis and Andrew Westbrooke have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside their home. Specifically, Jennifer, Mr. Laux, Mr. Willis and Mr. Westbrooke have failed to utilize all resources made available to them for the purpose of changing parental conduct to allow any of them to assume or resume and maintain parental duties. In addition, Jennifer, Mr. Laux, Mr. Willis, and Mr. Westbrooke have demonstrated a lack of commitment toward the children by their actions and inactions showing an unwilliness (sic) to provide an adequate permanent home for them [ORC 2151.414(E)(1) and (4)].
 {¶ 29} "5. After considering all relevant factors including but limited (sic) to subsections (1) through (5) of subsection (D) of ORC 2151.414, it is the finding of this Court that JFS has made all reasonable efforts to prevent the removal of the children from the home. It is the further finding of this Court that the children should not be placed with their Mother or their respective Fathers and Termination of their Parental Rights and commitment of the Permanent Legal Custody of John Willis (Johnny), Robert Laux (B.J.) and Tristan Laux (Tristan) to JFS is in their BEST INTEREST." Judgment Entry, June 7, 2002, at 8-9.
 {¶ 30} We note the trial court made conclusions of law four and five under R.C. 2151.414(E)(1), which it was not required to do in regard to appellant, as the court did not have to rely on R.C. 2151.414(B)(1)(a), based on the "abandonment" finding. See R.C. 2151.414(B)(1)(b). The record nonetheless reveals that appellant lives in Illinois with his purported fiancé, who is still married to a husband who is incarcerated for non-support and a ninth drunk driving conviction. The fiancé owns the house. Prior thereto, appellant lived with another female whose husband was also in prison. At the time of the permanent custody hearing, appellant was on probation for battery and marijuana trafficking convictions. The battery conviction stemmed from a fight appellant engaged in with a man he accused of sleeping with his girlfriend. Appellant admitted to a history of problems with anger management, alcohol abuse, and drug use during the time he was with Jennifer, BJ's mother, although he stated he had not used alcohol for approximately one year and had stopped smoking marijuana after the aforesaid trafficking charge. Although his child support obligation for BJ was only $40 per month, he admitted that he had not paid support for at least two years. He testified that he was receiving disability payments for a hearing impairment, but that he worked off and on as a roofer.
 {¶ 31} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Constr. (1978), 54 Ohio St.2d 279. Upon review of the record in light of R.C. 2151.414(B)(1)(b), we conclude the trial court's grant of permanent custody to JFS was not against the manifest weight of the evidence.
 {¶ 32} Appellant's Second Assignment of Error is overruled.
 {¶ 33} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Coshocton County, Ohio, is hereby affirmed.
By: Wise, J., Gwin, P.J., and Farmer, J., concur.
Topic: Parental Custody.
[1] We previously addressed a similar argument in relation to Jennifer.